UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID EVANS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No.: 18-cv-1352-MMM |
| ) | |
| .HITCHISON, et al., ) | |
| ) | |
| **Defendants.** ) | |

## MERIT REVIEW – AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files an amended complaint alleging that his First and Eighth Amendment rights were violated through strip searches conducted at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff, who was housed at the Menard Correctional Center ("Menard"), alleges that from August 2015 onward, he was routinely transferred to the Pontiac on writs for court appearances. Plaintiff alleges that during two of these transfers, Defendants Hitchison, Punke and Keller subjected him to strip searches in circumstances which violated his religion. Plaintiff pleads that on November 2, 2016, he was received at Pontiac with a group of approximately 15

1

other inmates. The inmates were separated into two transparent bullpens within sight of three female nurses. Plaintiff alleges that Defendant Officers Keller and Hitchison ordered them to strip in sight of the females and homosexual and transsexual inmates in the group.

Plaintiff told Defendants that he was Muslim and being nude in front of women and homosexuals was against his religion. Defendant Keller informed Plaintiff that the orders were not subject to religious debate and Defendant Keller ordered him to comply or be taken to segregation. Plaintiff removed his clothing and was ordered to turn, bend over and spread his buttocks within five feet of the nurses. Plaintiff claims that Nurse Jade looked at his manhood and covered her mouth, either in an expression of surprise or mockery. After the strip search, Plaintiff was allowed to dress and then directed to a bullpen where three nurses conducted cursory examinations.

On August 30, 2017, Plaintiff again returned to Pontiac where he and other inmates were ordered by Defendant Punke to remove their clothing. Plaintiff argued that the search was "bogus as hell" as there were three nurses present and a transsexual inmate in a nearby bullpen who would see him nude. The search was nonetheless conducted with Plaintiff complaining that the three nurses "boldly gazed upon me." He complains, also, that a transsexual inmate in an adjacent bullpen called out "Evans I hope they make us cellmates." Plaintiff was thereafter allowed to dress and was taken to the bullpen where the group underwent cursory examination by the three nurses.

Plaintiff makes the further claim that these searches violated Illinois Department of Corrections ("IDOC") policies, not otherwise identified. He names Lieutenants Hitchison and Punke as well as Officer Keller, requesting compensatory and punitive damages but not injunctive relief.

2

Plaintiff asserts that Defendants violated his First Amendment rights to the free exercise of his religion when they caused him to be nude in front of female staff and other inmates whom he identifies as homosexual and transsexual, without identifying the support for these beliefs. While the First Amendment safeguards Plaintiff's religious practice, "[a] prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion. *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996) (internal citations omitted). Prison officials may restrict a particular religious tenet in furtherance of sound penological interest, even "if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment." *See Id*. at 33 (dismissing claims against defendants based on qualified immunity).

There is not sufficient information at merit review, however, for the Court to determine whether Defendants had a sound penological interest at stake which would outweigh Plaintiff's First Amendment rights. Accordingly, this claim will proceed against Defendants Hitchison, Punke and Keller.

Plaintiff's replead Eighth Amendment allegations, however, fails to state a claim of cruel and unusual punishment. This is so, as it is widely recognized that prisoners do not have the same expectation of privacy as members of the general public. "A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room.... We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals...." *Burge v. Murtaugh*, No. 07-0336PS, 2007 WL 4335461, at *2 (N.D. Ind. Dec. 7, 2007) quoting *Hudson v. Palmer,* 468 U.S. 517, 527-28 (1984).

The strip search of a prisoner become unconstitutional only if maliciously motivated, unrelated to institutional security, and totally without penological justification. *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir.2004); *Calhoun v. Detella,* 319 F.3d 936, 939 (7th Cir.2003). Here, Plaintiff has not made any credible allegations here that the strip searches were performed in a humiliating or degrading manner. He pleads facts which establish that the officers were polite though plaintiff argued with them and initially refused to comply with their orders. Furthermore, it does not violate the Eighth Amendment for a prisoner to be seen nude by a member of the opposite gender as "[t]here are too many permutations to place guards and prisoners into multiple classes by sex, sexual orientation, and perhaps other criteria, allowing each group to be observed only by the corresponding groups that occasion the least unhappiness." *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995). The Eighth Amendment claim against Defendants Hitchison, Punke and Keller is DISMISSED.

Plaintiff also asserts Defendants' alleged violation of IDOC policies as a constitutional infringement. It is clear, however, that § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). A violation of a departmental policy, without more, does not amount to a constitutional violation. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017). This claim is DIMISSED.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the First Amendment claim against Defendants Hitchison, Punke and Keller. Plaintiff's claims alleging Eighth Amendment and IDOC policy violations are DISMISSED for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. All other claims will not be included in the case, except in the Court's

discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure.

2. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

3. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

4. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

5. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

6. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

8. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED: 7/31/2019                                  _____s/Michael M. Mihm_____
                                                          MICHAEL M. MIHM
                                                    UNITED STATES DISTRICT JUDGE